KENNETH V. STEVENS and WALTER FRANCIS BENTLEY, Plaintiffs-Appellees, *v.* CLIFFS AT PRINCEVILLE ASSOCIATES, a Hawaii limited partnership, Defendant-Appellant

NO. 8950

(CIVIL NO. 66848)

JULY 6, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

The first circuit court granted summary judgment in favor of the buyers and against the seller for the return of $19,300 which was a down payment towards the purchase of a condominium apartment.

The seller appeals the circuit court's judgment on several grounds: (1) that there is an issue of material fact as to whether Robin Jo Stevens was an intended purchaser; (2) that the circuit court erred in finding that the buyers were unable to secure a mortgage loan because of a material change in financial condition; and (3) that the circuit court erred when it reformed the contract by giving the buyers a greater right to cancel the sales contract.

I.

The undisputed material facts are as follows: On May 14, 1979, Kenneth V. Stevens and Walter Francis Bentley, as buyers (Appellees), executed a Leasehold Condominium Sales Contract and Deposit Receipt (sales contract) to purchase apartment number 4110 of the Cliffs at Princeville condominium project located at Princeville, Kauai, Hawaii. At the time Appellee Stevens executed the sales contract, he was married to Robin Jo Stevens (Robin Jo) who did not join in the execution of the sales contract. On June 12, 1979, Cliffs at Princeville Associates, a Hawaii limited partnership, as seller (Appellant), accepted the sales contract through its general

partner, CAP Development Corporation. The total purchase price of the apartment was $129,100 payable as follows: Payment A-1 ($2,000) to be paid upon execution of the sales contract by buyer; Payment A-2 ($4,300) to be paid within ten days of seller's acceptance of the sales contract; Payment B ($13,000) to be paid six months following the date on which Payment A-2 is due; Payment C ($6,520) to be paid upon preclosing as defined in the sales contract; Payment D ($103,280) to be paid upon final closing as defined in the sales contract. Appellees also indicated in the sales contract that the method of purchase was to be a cash down payment and the balance of the purchase price to be obtained via a mortgage loan. Appellees deposited into escrow the following amounts: $2,000 on or about June 18, 1979; $4,300 on or about July 13, 1979; $6,500 on or about January 30, 1980; $6,500 on or about February 7, 1980; a total of $19,300.

On or about August 7, 1979, Appellees, along with Robin Jo who was still the wife of Appellee Stevens, applied to Honolulu Mortgage Company, Inc. (Honolulu Mortgage) for a mortgage loan to finance the purchase of the apartment. On February 1, 1980, Honolulu Mortgage, through Glenna L. Leavitt, an Assistant Vice President, offered Appellees and Robin Jo a mortgage loan in the amount of $103,250 subject to terms and conditions, one of which was as follows: "There must be no adverse change in the financial or other information set forth in your loan application between the date of your application and the date of settlement." On February 12, 1979, Appellees and Robin Jo accepted the loan offer subject to the certain terms and conditions stated in the offer.

In May of 1980, Robin Jo filed for a divorce from Appellee Stevens in California and obtained a divorce decree in December, 1980. Shortly after receiving notice of Robin Jo's divorce action, Appellee Stevens notified Glenna L. Leavitt and the sales agent of Princeville Realty Corporation, Michael C. McDonnell, of the divorce action. Ms. Leavitt informed Appellee Stevens that in the absence of Robin Jo as a co-borrower and her income, Appellees did not qualify for the mortgage loan and advised that Appellees should attempt to secure another co-borrower. Appellees were unsuccessful in securing another co-borrower. Appellee Stevens then notified McDonnell of the situation and requested a return of the

down payment. McDonnell informed Appellee Stevens that "there should not be any problem obtaining a refund minus a routine cancellation fee" and requested a letter explaining the situation and also a letter from Robin Jo's attorney confirming Robin Jo's withdrawal from the loan application. Both letters were sent to McDonnell in early August. By letter dated August 6, 1980, Appellant notified Appellees that they were in default of the sales contract and gave Appellees twenty days to cure the default. On August 25, 1980, Appellee Stevens notified Appellant by mailgram that Appellees did not qualify for the mortgage loan and requested the return of the $19,300. On August 30, 1980, Appellant acknowledged receipt of the mailgram, cancelled the sales contract, and informed Appellees that all sums paid belonged to Appellant.

## II.

Is there an issue of material fact as to whether Robin Jo was an intended buyer? We answer in the negative.

In order to bind a person to a contract for the sale of land or of any interest therein, the contract must be signed by that person or by someone lawfully authorized in writing to do so. *See Testa v. Kahahawai,* 12 Haw. 254, 257 (1899); *Harper v. Freeman,* 3 Haw. App. 1, 3, 639 P.2d 1113, 1114 (1982); *Bokern v. Loud,* 108 S.W.2d 1049 (Mo. Ct. App. 1937).

It is undisputed that Robin Jo neither filled out nor executed the sales contract, nor negotiated or contacted Appellant regarding the purchase of the apartment in question. There is nothing in the record to indicate that Robin Jo by her conduct or action, led or could have led Appellant to believe she was one of the purchasers of the apartment. No representation, written or oral, that Robin Jo would be one of the buyers of the apartment was made by Appellees to Appellant. Appellant, as a matter of law, had no reason to believe that Robin Jo was a buyer or even an intended buyer of the apartment. Furthermore, Robin Jo was under no legal obligation to Appellant to participate in obtaining a mortgage loan for the purchase of the apartment by the Appellees. We hold that Robin Jo, as a matter of law, was not a buyer of the apartment, nor an intended buyer.

### III.

Did the court err in finding that Appellees were unable to secure a mortgage loan due to a material change in their financial circumstance? We hold that no error was committed.

When Robin Jo withdrew her loan application, Honolulu Mortgage's position was that without Robin Jo's income and without Robin Jo as a borrower, Appellees' application for a mortgage loan could not be approved. Obviously, the financial circumstance of the Appellees was then materially altered. Appellees had no control over Robin Jo's actions and therefore, Appellees cannot be held accountable for her withdrawal. *Stratton Group, Ltd. v. Sprayregen,* 458 F. Supp. 1216 (S.D.N.Y. 1978). Under the contract, the legal obligation to make an application for the financing of the purchase of the apartment via a mortgage loan ran solely to the Appellees. Nothing in the contract obligated Robin Jo to apply for a mortgage loan with the Appellees. "Clearly a breach can only occur when one is under an obligation to perform in the first instance." *Id.* at 1218 (citation omitted).

### IV.

Appellant contends that the circuit court erred when it reformed the contract by giving the Appellees a greater right to cancel the sales contract. The contention is that: (1) the financing condition was a condition subsequent and not a condition precedent; (2) time was of the essence and Appellees had no right to terminate the contract beyond the time alloted by the contract; and (3) neither Appellees nor Robin Jo had exercised due diligence to secure the required mortgage loan.

### A.

A condition subsequent in a contract is a condition which divests a liability on a contract after it has once accrued. A condition subsequent presupposes a presently enforceable agreement and is very rare and not favored in the law. *Dunne v. Minsor,* 312 Ill. 333, 143 N.E. 842 (1924); *Hoffman v. Employer's Liab. Assur. Corp.,* 146 Or. 66, 29 P.2d 557 (1934).

A condition precedent is a condition which must be performed or must happen before liability arises on the promise which the condition qualifies, or it is one which must be fulfilled before there is a right to performance. *Lach v. Cahill*, 138 Conn. 418, 85 A.2d 481 (1951); *Hoffman v. Employer's Liab. Assur. Corp., supra.* "If the condition is not fulfilled, the right to enforce the contract does not come into existence." *Lach v. Cahill*, 138 Conn. at 421, 85 A.2d at 482 (citations omitted); *Handley v. Ching*, 2 Haw. App. 166, 627 P.2d 1132 (1981) (per curiam).

It is clear that the requirement of applying for a mortgage loan in this case is a condition precedent to Appellant's right to enforce the contract. Obviously, the sales contract was not immediately binding and enforceable when Appellant executed the contract. There is no dispute that the terms of the sales contract contemplated the purchase of the condominium unit via a "cash down payment and a mortgage loan." There was no unconditional liability upon Appellees to pay the purchase price in the event the contemplated mortgage financing did not materialize. Appellees submitted written applications for a mortgage loan to Honolulu Mortgage, the lending institution recommended by the Appellant, by filling-out the necessary form applications. It is undisputed that Honolulu Mortgage would have approved and granted the loan but for the withdrawal of Robin Jo as an additional borrower. Appellees alone, through no fault of theirs, could not qualify for the mortgage loan.[1] Appellees' liability under the sales contract then ceased, and they were entitled to recover their deposit. *See Willeford v. Walker*, 499 S.W.2d 190 (Tex. Civ. App. 1973).

### B.

Appellant argues that time was of the essence of the contract and therefore, Appellees, not having performed within the time

---

[1] Appellees' acceptance of Honolulu Mortgage's conditional loan offer did not fulfill the requirements of the financing condition. Until the purchasers had a definite and binding commitment from Honoulu Mortgage, they could not have paid-off on the contract and the condition remained unfulfilled. *See Potter v. Ridge Realty Corp.*, 28 Conn. Supp. 304, 259 A.2d 758 (Super. Ct. 1969); *Winkelman v. Allen*, 214 Kan. 22, 519 P.2d 1377 (1974); *Shell Oil Co. v. Kapler*, 235 Minn. 292, 50 N.W.2d 707 (1951).

limitation set forth in the contract,[2] forfeited their deposit.

We do not look with favor upon forfeitures of down payments in a real estate transaction. *See Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978). Ordinarily time is not regarded as of the essence in a contract for the sale of real property unless specifically stated in the contract. *Freeman v. Boyce,* 66 Haw. 327, 661 P.2d 702 (1983).

Although paragraph 22 of the contract contained an express clause stating that time is of the essence, this condition may be waived. *See Shumaker v. Lear,* 235 Pa. Super. 509, 345 A.2d 249 (1975); *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Freeman v. Boyce, supra.* A waiver is the intentional relinquishment of a known right, and such relinquishment may be accomplished by conduct. *Globe Brewing Co. v. American Malting Co.,* 152 Ill. App. 194 (1909), *rev'd on other grounds,* 247 Ill. 622, 93 N.E. 300 (1910); *Kane v. American Nat'l Bank & Trust Co.,* 21 Ill. App. 3d 1046, 316 N.E.2d 177 (1974); *Shoreham Developers, Inc. v. Randolph Hills, Inc.,* 248 Md. 267, 235 A.2d 735 (1967).

> Where time of performance is of the essence of the contract, a party who does any act inconsistent with the supposition that he continues to hold the other party to his part of the agreement will be taken to have waived it altogether. When a specific time

---

[2] The sales contract provided for the financing of the purchase as follows:

5. Financing of Purchase.

(a) *Qualifying for Loan.* If Buyer requires financing, he shall, within ten (10) days after receiving notice of Seller signing this Contract, apply to one or more lending institutions suggested by Seller for such loan or to any other lending institution and, on request, promptly sign and deliver all documents and diligently take all steps necessary to obtain such loan. While Seller may be able to assist Buyer in obtaining financing, it is expressly understood and agreed that Buyer is under no obligation to utilize Seller's suggested lending institutions, nor is Seller representing or warrantying that it will be able to obtain any financing for any Buyer. An executed copy of any mortgage commitment obtained by Buyer shall be delivered to Seller. If the application for such loan is rejected or not approved within forty-five (45) days after application, then the Seller or Buyer may terminate this Contract and upon such termination, Seller shall cause Escrow Agent to refund to the Buyer the amounts already paid, without interest, less the cost of any credit report, escrow cancellation fees, if any, and other costs actually incurred by the Seller or lending institution in processing the loan application.

is fixed for the performance of a contract and is of the essence of the contract and it is not performed by that time, but the parties proceed with the performance of it after that time, the right to suddenly insist upon a forfeiture for failure to perform within the specified time will be deemed to have been waived and the time for performance will be deemed to have been extended for a reasonable time.

*Shoreham Developers, Inc. v. Randolph Hills, Inc.,* 248 Md. at 276, 235 A.2d at 741 (quoting *Globe Brewing Co. v. American Malting Co.,* 152 Ill. App. 194 (1909)); *Salvatore v. Trace,* 109 N.J. Super. 83, 262 A.2d 409 (App. Div. 1969); 6 S. Williston, *Treatise on the Law of Contracts* § 856 (W. Jaeger 3d ed. 1962).

Under the contract, Appellees were required to apply for financing within ten days after receiving notice of Appellant signing the contract. Appellees applied for financing fifty-seven days after Appellant signed the contract. This was done with Appellant's full knowledge and without any objections. The contract further provides that if the application for a mortgage loan is rejected or not approved within forty-five days after application, then Appellant or Appellees may terminate the contract. Honolulu Mortgage granted Appellees and Robin Jo a conditional approval of their loan application 132 days after the forty-five day limitation period. Here again, Appellant, with full knowledge of the expiration of the forty-five day limitation period, was content with Appellees' performance. Appellant had every right to timely terminate the contract. Instead, Appellant elected to allow Appellees to proceed with their loan application. In view of Appellant's conduct, we hold, as a matter of law, Appellant waived its right to enforce the condition of time being of the essence.

Appellant, however, could have reinstated the time of performance obligation by notifying Appellees of its intention to do so. *See Bettis v. Bettis,* 228 N.W.2d 193 (Iowa 1975); *Finn v. Glick,* 42 N.J. Super. 514, 127 A.2d 204 (App. Div. 1956). Here, no such notice was given to Appellees.

## C.

Appellant argues that a question of fact exists as to whether Appellees used due diligence in obtaining a mortgage loan. We disagree.

It is undisputed that Appellees met all the requirements necessary for Honolulu Mortgage to make a determination to grant or reject the loan application. Honolulu Mortgage's rejection of Appellees' application was based solely on insufficient income. There is nothing in the record to indicate that Appellees or Appellant knew of another lending institution that would have approved the loan application, or to dispute Appellees' claim that they attempted to secure an additional borrower. *See Century 21 Acadia Realty & Dev. Co. v. Brough,* 393 So. 2d 287 (La. Ct. App. 1980); *Woods v. Austin,* 347 So. 2d 897 (La. Ct. App. 1977). Even if Appellees did not attempt to secure an additional borrower, we hold that the Appellees are not obligated, as a matter of law, to secure additional borrowers in the event their bona-fide loan applications are rejected for lack of sufficient income.

Affirmed.

*Andrew V. Beaman (William H. Dodd* and *Melvin Y. Kaneshige* with him on the briefs; *Chun, Kerr & Dodd,* of counsel) for Cliffs at Princeville Associates, defendant-appellant.

*Jeffrey Brunton (Michael L. Biehl* with him on the brief; *Case, Kay & Lynch,* of counsel) for Kenneth V. Stevens and Walter Francis Bentley, plaintiffs-appellees.